UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VAWN MOBBS,

                Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. 3:17-cv-05374-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Vawn Mobbs has brought this matter for judicial review of defendant's denial of her application for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision denying benefits.

I. BACKGROUND

Ms. Mobbs filed an application for SSI benefits and another one for a period of disability and disability insurance benefits, both on October 1, 2012. Dkt. 9, Administrative Record (AR) 25. She alleged in both applications that she became disabled beginning September 30, 2011.[1] AR 25. That application was denied on initial administrative review and on reconsideration. AR

---

[1] SSI benefits are based on whether a claimant is "aged, blind or disabled", and whether the claimant has income and resources that fall below certain thresholds. 42 U.S.C. §1382(a). This is different from Social Security Disability Income benefits (SSDI). SSDI benefits are based on earnings, and the benefits are limited to the period of insurance. 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A). The legal criteria for deciding whether a disability exists is the same under both SSI and SSDI. *Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017).

ORDER - 1

25. A hearing was held before an administrative law judge (ALJ) on June 22, 2015. AR 48-83. Ms. Mobbs and a vocational expert appeared and testified.

The ALJ found that Ms. Mobbs could perform jobs that exist in significant numbers in the national economy, and therefore that she was not disabled. AR 25-42 (ALJ decision dated July 27, 2015). The Appeals Council denied Ms. Mobbs's request for review on March 17, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Mobbs appealed that decision in a complaint filed with this Court on December 14, 2016. Dkt. 3; 20 C.F.R. §§ 404.981, 416.1481.

Ms. Mobbs seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing that the ALJ misapplied the law and lacked substantial evidence for her decision. Ms. Mobbs contends that the ALJ erred at steps two and five of the five-step criteria. The alleged errors concern the ALJ's reasons for finding psychogenic non-epileptic seizures not to be a severe impairment, for discounting Ms. Mobbs's statements about the severity of her symptoms, and for rejecting certain medical opinion evidence. For the reasons set forth below, the undersigned concludes that the ALJ properly applied the law and substantial evidence supports her decision. Consequently, the undersigned affirms the decision to deny benefits.

## II. STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id.*

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have residual functional capacity (RFC), and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason the ALJ did not rely on. *Id.* Only the reasons identified by the

ORDER - 3

ALJ are considered in the scope of the Court's review. *Id.*

### III. THE ALJ'S STEP TWO DETERMINATION

At step two of the sequential evaluation process, the ALJ must determine whether an impairment is "severe." 20 C.F.R. §§ 404.1520, 416.920. In this case, the ALJ determined that Ms. Mobbs had five severe impairments: right shoulder tendonitis and degenerative joint disease, degenerative disc disease, obesity, affective disorder, and anxiety disorder. AR 27.

Ms. Mobbs contends that the ALJ erred in failing to find psychogenic non-epileptic seizures, or "pseudoseizures," to be a severe impairment at step two. She contends that the ALJ ignored medical records and lay testimony indicating that she suffers debilitating seizures. She also contends that the ALJ erred in relying on the opinion of a physician, Dr. R. Richard Sloop, who cast doubt on Ms. Mobbs's accounts of seizures and representations of her symptoms. *See* AR 504-06.

An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); SSR 85-28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen*, 80 F.3d at 1290. The Ninth Circuit recently emphasized that this inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC."

ORDER - 4

*Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC). The court noted that an ALJ assessing a claimant's RFC before steps four and five "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Thus, the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two. *Buck*, 869 F.3d at 1049.

The Ninth Circuit concluded, in the case before it, that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." *Buck*, 869 F.3d at 1049 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

The same is true here. Because the ALJ decided step two in Ms. Mobbs's favor, the ALJ was required to consider evidence of any and all impairments, severe or not, in assessing Ms. Mobbs's RFC. *See Buck*, 869 F.3d at 1049. And despite finding Ms. Mobbs's psychogenic seizures to be non-severe, the ALJ still considered Ms. Mobbs's complaints of seizures and their effects together with the impairments the ALJ did find to be severe. AR 28.

Ms. Mobbs contends that the ALJ made a harmful error at step two because the ALJ did not consider whether Ms. Mobbs's psychogenic seizures were "medically equivalent" to the listing for convulsive epilepsy under the Social Security Administration regulations. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 11.00(A), 11.02.

At step three of the sequential evaluation process, the ALJ evaluates the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R.

ORDER - 5

Part 404, Subpart P, Appendix 1. 20 C.F.R §§ 404.1520(d), 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the listings. *Tackett*, 180 F.3d at 1098. A mental or physical impairment must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508, § 416.908; *see also* SSR 96-8p, 1996 WL 374184, at *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." SSR 83-19, 1983 WL 31248, at *2. "[S]ymptoms alone" will not justify a finding of equivalence. *Id.* The ALJ is not required to compare a claimant's unlisted impairments to a listing "unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). This is particularly true where the claimant has failed to set forth any reasons as to why the listing criteria have been met or equaled. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

To fully satisfy Listing 11.02, a plaintiff must establish that she meets the following criteria:

ORDER - 6

convulsive epilepsy (grand mal or psychomotor), documented by detailed
description of a typical seizure pattern, including all associated phenomena;
occurring more frequently than once a month in spite of at least 3 months of
prescribed treatment [,][w]ith [one of the following]: [d]aytime episodes (loss of
consciousness and convulsive seizures) or nocturnal episodes manifesting
residuals which interfere significantly with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1.

Listing 11.02 also requires "[a]t least one detailed description of a typical seizure," including "the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 11.00(A) (12/15/04 to 09/28/16).[2] A reporting physician "should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information." *Id.* And "if professional observation is not available," then "[t]estimony of persons other than the claimant is essential for description of type and frequency of seizures." *Id.*

Here, Ms. Mobbs reported seizures occurring more than once per month at various points in the record. *See* AR 405, 541, 585. Mark Silverstein, MD, described a seizure he witnessed in September 2012:

> [Ms. Mobbs] was lying there on bed with just her fingers twitching, right hand greater than left hand, her eyes were closed, her pupils were nonreactive to light and she was moaning a little bit. I observed her doing that for several minutes. She did not have any tonic-clonic seizures. She did not have any deviation of her eyes to any specific direction and had no nystagmus appreciable.

AR 405. And in a questionnaire, Ms. Mobbs's friend, Penny Nelson, reported that Ms. Mobbs suffers from seizures on average once a week, both at night and during the day, in which her "who[le] body shakes, she crys [sic] cause it hurts, Incoherent, slurring," and that they lasted 10 to 15 minutes. AR 307-08.

---

[2] https://secure.ssa.gov/poms.nsf/lnx/0434131013

ORDER - 7

The ALJ did not compare Ms. Mobbs's psychogenic seizure symptoms to the requirements of Listing 11.02. Nonetheless, Ms. Mobbs has not shown that this was error. Although Ms. Mobbs reported frequent seizures, self-reported symptoms alone cannot justify an equivalence finding. SSR 83-19, 1983 WL 31248, at *2. Ms. Mobbs does not point to any objective signs or laboratory findings that would provide the "detailed description of a typical seizure pattern, including all associated phenomena" that the listing requires. 20 C.F.R. Part 404, Subpart P, Appendix 1.

Ms. Mobbs contends Dr. Silverstein's description of a seizure should satisfy the listing's requirement of a "detailed description of a typical seizure." 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 11.00(A). But Dr. Silverstein did not describe "the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena" as the listing requires. 20 C.F.R. Part 404, Subpt. P, App. 1, Listing 11.00(A).

Moreover, even if Dr. Silverstein and Ms. Nelson's accounts together showed specific symptoms that are severe enough to compare them to Listing 11.02, Ms. Mobbs makes no attempt to demonstrate that her general mental health treatment is equivalent to the listing's very specific requirements for antiepileptic treatment.[3] The ALJ was therefore not required to

---

[3] The listing states:

> Under 11.02 and 11.03, the criteria can be applied only if the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment. Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy. Determination of blood levels of phenytoin sodium or other antiepileptic drugs may serve to indicate whether the prescribed medication is being taken. When seizures are occurring at the frequency stated in 11.02 or 11.03, evaluation of the severity of the impairment must include consideration of the serum drug levels. Should serum drug levels appear therapeutically inadequate, consideration should be given as to whether this is caused by individual idiosyncrasy in absorption or metabolism of the drug. Blood drug levels should be evaluated in conjunction with all other evidence to determine the extent of compliance. When reported blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels. Where adequate seizure control is obtained only with unusually large doses, the possibility of impairment resulting from

ORDER - 8

compare her reported seizures to Listing 11.02. *See Lewis*, 236 F.3d at 514.

Ms. Mobbs also has not shown any error from the ALJ's failure to include certain limitations in the RFC assessment. The ALJ considered psychogenic seizures among the impairments in her RFC analysis. AR 33. But the ALJ gave little weight to opinions from Dr. Caryn Jackson and Dr. Phillip Barnard, who both found Ms. Mobbs to be severely limited due in part to her seizures. AR 37, 40, 442, 482. The ALJ gave significant weight to Dr. Sloop's opinion suggesting that Ms. Mobbs was malingering with respect to her symptoms. AR 38, 504. The only aspect of the ALJ's RFC analysis that Ms. Mobbs challenges is its rejection of Dr. Barnard's opinion, discussed below. Apart from this, Ms. Mobbs simply asks the Court to reweigh the medical evidence, her testimony, and the testimony of a lay witness and arrive at a different conclusion than the ALJ. This is outside this Court's mandate in reviewing the ALJ's decision. *Orn*, 495 F.3d at 630.

Because the ALJ's failure to find psychogenic seizures to be a severe impairment at step two did not cause any error at step three or in assessing Ms. Mobbs's RFC, the ALJ did not commit harmful error at step two. *See Buck*, 869 F.3d at 1049.

## IV. THE ALJ'S CONSIDERATION OF MOBBS'S TESTIMONY

Ms. Mobbs next contends that the ALJ did not provide adequate reasons to reject her testimony on the severity of her symptoms. She testified that she suffers from "pseudoseizures" and "odd seizures" and that these are brought on by pain and anxiety. She testified that she has

---

> the side effects of this medication must also be assessed. Where documentation shows that use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures, this must also be considered in the overall assessment of impairment level.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing 11.00(A) (12/15/04 to 09/28/16).

ORDER - 9

seizures once or twice a week and used to have them almost every day. She stated that she had suffered three "odd seizures" and two "pseudoseizures" so far that month. She stated that she had a seizure from stress after a half hour of volunteering at a school and that even mild activities like washing dishes or vacuuming cause seizures if she tries to do them for over an hour. She also testified that she has to rest while showering and cannot walk a block without her legs going numb. She stated that she cannot sit for over an hour because of pain and cannot stand or walk for over 20 minutes because of migraine headaches. And she stated that she suffers from depression and PTSD that make her unable to work with adults. AR 58, 60, 64, 69, 72-76.

The ALJ found Ms. Mobbs's testimony on the severity of her symptoms "only partially credible." AR 34. She found that "[t]he record contains clear evidence that the claimant has consciously attempted to portray limitations than [sic] are not actually present in order to increase the chance of obtaining benefits." AR 34. She also found that Ms. Mobbs's activities of daily living showed her to be more functional than Ms. Mobbs's testimony indicated; that objective medical evidence showed Ms. Mobbs to be less physically limited than she alleged; that the record showed Ms. Mobbs's mental symptoms were also not as severe as she described; and that some evidence showed that Ms. Mobbs had not fully complied with her treatment plan for depression. AR 34-37.

Questions of credibility[4] are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility

---

[4] Since the ALJ's ruling in this case, the Social Security Administration issued a ruling to "'eliminat[e] the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term' and to 'clarify that subjective symptom evaluation is not an examination of an individual's character' but instead was meant to be consistent with 'our regulatory language regarding symptom evaluation.'" *Trevizo*, 871 F.3d at 678 n.5 (quoting SSR 16–3p (2016)). As the Ninth Circuit recently explained, the new

> ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those

ORDER - 10

determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d. 821, 834 (9th Cir. 1995) (citation omitted). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. On the other hand, if affirmative evidence does show malingering, this relieves the ALJ from the burden of providing clear and convincing reasons to discount the claimant's testimony. *Baghoomian v. Astrue*, 319 F. App'x 563 (9th Cir. 2009). Instead, the ALJ must give reasons that are specific and legitimate. *See Olivar v. Berryhill*, No. 2:17-CV-00657-DWC, 2017 WL 4857089, at *5 (W.D. Wash. Oct. 27, 2017).

An ALJ does not need to make a specific finding of malingering, so long as affirmative evidence in the record shows malingering. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008). The evidence as a whole must support a finding of malingering. *O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

Because the record contains affirmative evidence of malingering and the ALJ gave specific and legitimate reasons to discount Ms. Mobbs's testimony about the severity of her symptoms, the ALJ did not err in doing so. *See Lester*, 81 F.2d at 834.

---

symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Id.* (emphasis added).

ORDER - 11

Although the ALJ was not required to make a specific finding of malingering, she did so here. The ALJ's finding that "[t]he record contains clear evidence that the claimant has consciously attempted to portray limitations than [sic] are not actually present in order to increase the chance of obtaining benefits" encapsulates the definition of malingering in the DSM-IV and DSM-5.[5] AR 34; *see Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (court may draw "specific and legitimate inferences from the ALJ's opinion").

Further, the record contains affirmative evidence of malingering, and the evidence as a whole supports the ALJ's malingering finding. *See O'Donnell*, 318 F.3d at 818; *Carmickle*, 533 F.3d at 1160. In particular, Dr. R. Richard Sloop indicated that he believed Ms. Mobbs to be exaggerating her symptoms throughout a neurological exam. AR 504-05. Dr. Sloop's purpose as a neurologist was to evaluate Ms. Mobbs for epilepsy or another neurological condition, which he found no signs of. AR 504-05. He instead noted an impression of "[p]sychogenic, non-epileptic seizure-like events" based on Ms. Mobbs's reports of symptoms. AR 504. Dr. Sloop thus concluded that Ms. Mobbs's alleged impairments had no neurological basis, but not necessarily that those impairments did not exist or significantly limit her functioning. But while Dr. Sloop's diagnoses do not indicate malingering, his examination notes do. He found:

> On examination, she does not give good effort, doesn't have any idea what month it is though she knows it is the 4th of the month (strangely enough). . . . She has dramatic collapsing in the right upper and right lower extremities which is clearly non-genuine on strength testing and to a lesser degree [on the left] . . . Her rapid alternating movements are "slow" in the upper extremities bilaterally, but it looks voluntary. . . . She has intermittent trembling, . . . but it is distractible and not genuine. She says that pin prick is not very sharp in the right hand or the right foot, but then when I touch her over thenar imminence [sic] or in the instep, she

---

[5] Malingering is the ""intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 739; *see also* DSM-5 at 726 (defining malingering similarly).

ORDER - 12

> suddenly decides that it is really quite sharp. She walks down the hall deliberately
> and slowly, though no abnormalities are seen. She does this holding her arms out
> as if it requires great effort to walk tandem, but she does so quite easily. In fact,
> her reflexes are all completely symmetric and normal.

AR 505. Because this is affirmative evidence of malingering, the ALJ was not required to give clear and convincing reasons to discount Ms. Mobbs's testimony. *See Carmickle*, 533 F.3d at 1160.

Having found evidence of malingering, the ALJ also offered specific and legitimate reasons to discount Ms. Mobbs's statements about her symptoms.

First, the ALJ found that the medical record does not substantiate Ms. Mobbs's reports of severely limiting symptoms, and the record supports that finding. AR 35. An ALJ cannot reject a claimant's pain testimony solely on the basis of a lack of objective medical evidence in the record. *See Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). Such a determination can justify discounting a claimant's testimony, however, when the ALJ "specif[ies] what complaints are contradicted by what clinical observations." *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998); *see also Lester*, 81 F.3d at 834.

Here, in addition to her testimony at the hearing, Ms. Mobbs reported that she needs to lie down often due to pain; gets dizzy often and must use a cane because of her unsteady gait; cannot stand or walk for longer than five minutes or sit for longer than 15 minutes before needing to change position; cannot lift much weight; drops things due to right arm and hand weakness; cannot read numbers on buildings due to vision problems; and was hospitalized while suffering a mental breakdown with suicidal ideation. 346-51, 359.

The ALJ identified these specific complaints and cited to records that she found inconsistent with them. AR 35. The record supports this characterization. The ALJ could reasonably interpret Ms. Mobbs's physical examination results throughout the record as

ORDER - 13

inconsistent with the limitations she reported regarding her ability to stand, walk, sit, lift, grip, and see. These examination results are generally unremarkable and do not support severe physical conditions or limitations. AR 451, 473, 480, 485-86, 489-90, 715, 730-31, 735-36, 742-43.

While the record also contains objective signs of back and shoulder conditions, those signs indicate moderate limitations that the ALJ could reasonably find inconsistent with Ms. Mobbs's reports. *See* AR 480 ("overall preserved [range of motion] but with pain especially at extremes"), 490 (tenderness in lumbar spine and mild pain with motion, 476, 490), 411, 730 (MRI results show spondylosis with central canal stenosis, prominent facet arthrosis, and mild foraminal narrowing), 731 (left shoulder tenderness, moderate pain with motion; tenderness on palpation over distal clavicle). As Ms. Mobbs points out, Bryan Wernick, MD, wrote that Ms. Mobbs's lower-back complaints "seem consistent with lumbar spinal stenosis," 476. Dr. Wernick did not, however, opine or make findings suggesting that Ms. Mobbs was severely limited as she testified. *See* AR 476-77. While Ms. Mobbs asks the Court to draw a different conclusion from these medical records, the ALJ was entitled to draw rational conclusions from the evidence. *See Orn*, 495 F.3d at 630.

To the extent the record contains mental status examinations, those showed normal results, as well, describing Ms. Mobbs as alert, cooperative, and oriented and denying suicidal ideation. AR 688, 694.

Substantial evidence thus supports the ALJ's finding that the record does not substantiate the extreme limitations Ms. Mobbs reported.

Second, evidence of malingering can itself provide a specific and legitimate reason to discount a plaintiff's subjective statements. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir.

ORDER - 14

2010) (affirming credibility finding based in part on affirmative evidence of malingering, where claimant's activities contradicted asserted limitations and claimant's statements indicated ability to work but reluctance to do so for fear of affecting benefits); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a credibility determination based in part on a tendency to exaggerate was supported by substantial evidence); *Hegel v. Astrue*, 325 F. App'x 580, 581 (9th Cir. 2009) (unpublished) (holding that doctor's malingering finding was substantial evidence for rejecting treating physicians' opinions). Because the ALJ found that Ms. Mobbs malingered and the record contains "affirmative evidence" for that finding, that finding provides another specific and legitimate reason to discount Ms. Mobbs's subjective symptom testimony.

## V. THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

ORDER - 15

1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

To reject the un-contradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id.* The ALJ must explain the "specific and legitimate reasons" by: (1) summarizing detailed facts describing the conflicting clinical evidence; (2) making a statement about the ALJ's interpretation of the operative facts on which the ALJ bases his or her reasons; and (3) making specific findings about why the interpreted facts provide support for the reasons. *See id.* at 662-64. In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995).

Finally, a non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149. The opinion of a non-examining physician does not, standing alone, constitute substantial evidence concerning the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831.

A.  <u>The ALJ's Step Three, Four, and Five Determinations Regarding Medical Evidence</u>

At step three of the five-step "sequential evaluation process," the ALJ determined that Ms. Mobbs does not have an impairment or combination of impairments that meets the criteria of an impairment listed in the regulations. AR 28; *see* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. With respect to step three, Ms. Mobbs contends only that the ALJ erred in not considering

ORDER - 16

whether her seizures meet or equal a listed impairment. Dkt. 11, p. 9. This contention is discussed above.

Before determining at steps four and five whether Ms. Mobbs is disabled, the ALJ performed a more detailed assessment of the medical evidence to arrive at Ms. Mobbs's RFC. The Commissioner uses a claimant's RFC assessment at steps four and five to determine whether he or she can perform his or her past relevant work and whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." Id. The ALJ based her assessment of Ms. Mobbs's RFC on an examination of the medical evidence, and in part on her rejection of Dr. Barnard's opinion that Ms. Mobbs's mental health symptoms would significantly limit her ability to perform functions necessary to hold a job. AR 32-40.

Using the RFC she arrived at, the ALJ determined at step four that Ms. Mobbs could not perform her past work as a teacher. AR 40. Ms. Mobbs does not challenge that finding.

The vocational expert testified that a person with Ms. Mobbs's RFC could work as a dye loader, final assembler, or hand patcher. AR 78-80. Based on that testimony, the ALJ found Ms. Mobbs not disabled at step five. AR 41.

B. <u>Dr. Barnard's Examining Opinion</u>

Dr. Barnard performed a psychiatric examination of Ms. Mobbs in October 2012. AR 442. In doing so he interviewed Ms. Mobbs and performed a mental status exam, but he reviewed no medical records. AR 442-45.

Dr. Barnard opined that "Ms. Mobbs' anxiety on a daily basis would affect her ability to work to a severe extent." AR 443. He found that she would be severely limited in performing routine tasks without special supervision, adapting to changes in a routine work setting,

ORDER - 17

communicating and performing effectively in a work setting, completing a normal workday and work week without interruptions from psychologically based symptoms, and maintaining appropriate behavior in a work setting. AR 444. He further opined that Ms. Mobbs would be markedly limited in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision, and in asking simple questions or requesting assistance. *Id.*

Dr. Barnard observed that Ms. Mobbs's speech was slow and halting, that she showed a negative attitude, constant tremor, and poor eye contact, and that she presented as depressed and anxious but had an appropriate affect. He found that her perception was not within normal limits as she "[f]eels treated unfairly," that her memory was impaired, that she was distractible and "[s]elf pre-occupied," and that her insight was poor. AR 445.

C. The ALJ Gave a Specific, Legitimate, and Supported Reason to Discount Dr. Barnard's Opinion

The ALJ gave Dr. Barnard's opinion "little weight." AR 40. She explained that Dr. Barnard "did not have a treating relationship with the claimant, and his opinion is conclusory without much explanation." *Id.* She found that although Dr. Barnard's "opinion is somewhat consistent with his observation of the claimant's performance and demeanor during the mental status examination, it was just a snapshot of the claimant's functioning." *Id.* And she found that "[o]ther records show that the claimant's mental symptoms improved and have not been as limited as opined by Barnard." *Id.*

Ms. Mobbs contends that Dr. Barnard's opinion was unsupported because the record shows her symptoms waxing and waning, but overall deteriorating rather than improving.

The ALJ's analysis was legally sufficient.

ORDER - 18

As a preliminary matter, the Commissioner is correct that Dr. Barnard's opinion was contradicted by the reviewing opinions of Dan Donahue, PhD, and James Bailey, PhD. AR 95-96, 138-40. The ALJ gave these opinions "significant weight." AR 38. Thus, the ALJ was not required to give clear and convincing reasons for discounting Dr. Barnard's opinion. She instead needed to give specific and legitimate reasons for doing so. *See Revels*, 874 F.3d at 654.

The Commissioner acknowledges that the ALJ's finding that Dr. Barnard did not explain his opinion was unsupported because the ALJ acknowledged that Dr. Barnard's "opinion is somewhat consistent with his observation of the claimant's performance and demeanor during the mental status examination." AR 40; Dkt. 12, p. 15.

The ALJ did give a specific and legitimate reason to discount Dr. Barnard's opinion, however, in finding that Ms. Mobbs's records show that her mental-health symptoms were less limiting than Dr. Barnard opined. The record supports this reason. For example, numerous mental status exams found Ms. Mobbs to be alert, cooperative, and oriented and exhibiting appropriate behavior. AR 415, 447, 492, 573, 581, 589, 598, 635, 641, 645, 652, 658, 664, 677, 683, 688, 694, 735. With few exceptions, she exhibited a normal mood and affect throughout the record. *See* AR 415, 447, 492, 573, 581, 589, 594, 598, 650-51, 694, 736, 762; *but see* AR 525 (depressed affect), 585 (delayed speech, flat affect), 747-49 (unsigned intake evaluation noting facial expressions, affect and mood that indicate anxiety and depression, and marked impairments to attention span, intelligence, judgment, memory, and orientation to time).

Ms. Mobbs contends that these records showed that her symptoms waxed and waned, and that overall the record does not support the ALJ's finding. She points to an incident in May 2013 in which she stayed in a stabilization bed because she presented as a danger to herself. Dkt. 11, p. 18; AR 669, 671. The other observations she cites come from a single, unsigned intake

ORDER - 19

evaluation form from February 2015. AR 747-56. These records lend support to Dr. Barnard's opinion. But while more than one rational interpretation can be drawn from the evidence, the Court must uphold the ALJ's interpretation. *See Orn,* 495 F.3d at 630. As summarized above, the record as a whole contains "'such relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's conclusion that Ms. Mobbs is less impaired than Dr. Barnard opined. *See Trevizo*, 871 F.3d at 674. Consequently, the ALJ adequately considered the medical evidence in deciding whether Ms. Mobbs's RFC would allow her to find gainful employment.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined Ms. Mobbs to be not disabled. The Commissioner's decision to deny benefits therefore is AFFIRMED.

DATED this 29th day of December, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER - 20